J-S08043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2332 EDA 2024 |

Appeal from the Order Entered September 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000668-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2333 EDA 2024 |

Appeal from the Decree Entered September 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000464-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2334 EDA 2024 |

Appeal from the Order Entered September 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001153-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: T.A.B.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S08043-25

                                            :
                                            :
                                            :
    APPEAL OF: A.B., FATHER                 :
                                            :
                                            :
                                            :
                                            :
                                            :     No. 2335 EDA 2024

Appeal from the Decree Entered September 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000465-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 15, 2025**

A.B. (Father) appeals[1] from the orders and decrees, entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, involuntarily terminating his parental rights to his children, A.A.B., aka A.B., (born 9/2014) and T.A.B.-W., aka T.B., (born 1/2020) (collectively, Children), pursuant to Subsections 2511(a)(1), (2), and Section 2511(b) of the Adoption Act.[2]  **See** 23 Pa.C.S. §§ 2101-2938.  After careful review, we affirm.

We adopt the facts of this case as they are set forth in our separate memorandum decision addressing the Children's biological mother's (Mother) consolidated appeals of the termination of her parental rights to the Children

---

\* Retired Senior Judge assigned to the Superior Court.

[1] On September 23, 2024, our Court *sua sponte* consolidated Father's appeals at Nos. 2332 EDA 2024 through 2335 EDA 2024, inclusive.  **See** Pa.R.A.P. 513.

[2] Given the similarity of their initials, we refer to the child as "A.A.B." and the parent as "Father."

2

and of the Children's permanency goal changes to adoption, at Nos. 2495 EDA 2024 through 2498 EDA 2024, inclusive.

On November 12, 2023, the Department of Human Services (DHS) filed petitions to terminate Mother's and Father's parental rights to the Children. The court appointed Linda Walters, Esquire, as the Children's guardian *ad litem* and Joseph DeRitis, Esquire, as the Children's counsel, respectively.[3] On February 27 and May 16, 2024, the court held permanency and termination hearings. On September 4, 2024, the court entered decrees involuntarily terminating Father's parental rights to the Children, pursuant to Subsections 2511(a)(1), (2), and Section 2511(b) of the Adoption Act. **See** 23 Pa.C.S. §§ 2511(a), (b). That same day, the court also changed the goal for both the Children to adoption. Father filed timely notices of appeal and contemporaneous Pennsylvania Rule of Appellate Procedure 1925(b) concise statements of errors complained of on appeal. **See** Pa.R.A.P. 1925(a)(2).

On appeal, Father presents the following issues for our review:

1. Did the trial judge rule in error that [DHS met] its burden []of proof that [F]ather's parental rights to [the C]hildren be terminated[?]

---

[3] **See** 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings); **see also In re K.R.**, 200 A.3d 969, 984 (Pa. Super. 2018) (*en banc*) (same); **but see In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

2. Did the trial judge rule in error that [] terminating Father's rights would best serve the needs and welfare of the [C]hildren[?]

3. Did the trial judge rule in error that the goal be change[d] to adoption[?]

Father's Brief, at 6 (unnecessary capitalization omitted).

In his first issue on appeal, Father argues that because he was incarcerated at the time of the hearing he was "not able to engage in his [case planning] and not able to achieve goals that [he] would have been able to achieve if he was not incarcerated." Father's Brief, at 9. Father claims that, under Pennsylvania law, his parental rights may not be terminated merely due his incarceration. *See id.* (citing *In re R.I.S.*, 36 A.3d 567 (Pa. 2011)). Father relies on the testimony of Community Umbrella Agency[4] (CUA) Case Manager Adriana Maradiaga-Portillo at the termination hearing regarding her difficulties reaching Father while he was incarcerated:

> I did attempt to do a visit with [Father] up at [the correctional facility]. [. . .] So[,] I first went through [Father's] social worker. I never heard anything back from his social worker. So[,] I did send an email to three of the [correctional facility] wardens[ a]nd I got my visit approved. However, the day that I arrived at the prison[,] I was not able to see him. I sat there for maybe four, almost five hours[, and] I was turned away. [They s]aid that, you know, stuff was going on in the jail. [V]isits were concluded[ a]nd I was not able to see him[.]

Father's Brief, at 18-19 (citing N.T. Termination Hearing, 2/27/24, at 329-30). Father also notes that Case Manager Maradiaga-Portillo stated that she did not further explore prison visits between Father and the Children: "So[,]

---

[4] DHS implemented services through CUA Turning Points for Children.

unfortunately, due to the lack of communication []with the social worker, an[d] also my unawareness on how I was actually able to contact the warden to get a visit approved[, I did not schedule more visits]. But I mean I was turned away anyway. Those visits were not explored." *Id.* at 19 (citing N.T. Termination Hearing, 2/27/24, at 339-40). Accordingly, Father maintains that he was limited to the resources available to him while incarcerated, and there were never any visits and resources set up for him to connect with the Children. Also, Father argues that once released from the correctional facility, he availed himself to CUA for case planning. Essentially, Father concludes that his incarceration prevented him from participating in the termination proceedings and engaging with CUA and his case planning and that his incarceration is the sole reason his rights were terminated, which is not a permitted basis for termination under Pennsylvania law; therefore, he is entitled to relief. We disagree.

Our Supreme Court has set forth the well-settled standard of review in termination of parental rights cases as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

5

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

It is also well-settled that termination of parental rights requires clear and convincing evidence, based on the totality of the circumstances, which is evaluated on a case-by-case basis:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citations and quotation marks omitted).

Termination of parental rights is governed by Sections 2511(a) and (b) of the Adoption Act. *See* 23 Pa.C.S. §§ 2511(a), (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. *See In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

Subsection 2511(a)(2) requires the moving party, here DHS, to prove three factors by clear and convincing evidence: "(1) repeated and continued

incapacity, abuse, neglect[,] or refusal; (2) that such incapacity, abuse, neglect[,] or refusal caused the child to be without essential parental care, control[,] or subsistence; and (3) that the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted).  Further,

> [t]he grounds for termination of parental rights under [s]ection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties.  Nevertheless, parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities.  A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*Id.* (citation omitted).

Moreover, although incarceration alone is insufficient to support termination, "incarceration will certainly impact a parent's capability of performing parental duties, and may render a parent incapable of performing parental duties under [Subsection 2511](a)(2)." *In re K.M.W*., 238 A.3d 465, 474 (Pa. Super. 2020) (*en banc*) (citation and original emphasis omitted).  An incarcerated parent is expected to "take affirmative steps to support a parent-child relationship" and "utilize whatever resources are available to him while in prison in order to foster a continuing close relationship with his children." *In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008).  Additionally, the length of the confinement can be considered as "highly relevant" in a Subsection 2511(a)(2) analysis.  *See In re S.P.*, 47 A.3d 817, 830 (Pa. 2012).

Here, in terminating Father's parental rights to the Children, the trial court found Father's compliance with his case plan objectives was minimal and his relationship with the Children was non-existent:

> Father appears to have no relationship with the [C]hildren whatsoever. [Case Manager Maradiaga-Portillo] testified that she has only spoken to Father on five or fewer occasions during her time assigned to this case. She noted that Father has been in and out of jail throughout the pendency of this case. She sent [Father] his [case plan] objectives and he has made no progress toward reunification. She noted that [Father] only visited the [C]hildren twice. Neither child ever asks about Father and there is no bond between Father and either child. [Case Manager Maradiaga-Portillo] testified that she believed there would be no irreparable harm if Father's parental rights were terminated.

Trial Court Opinion, 1/15/25, at 33.

After our review, we conclude that there is clear and convincing evidence supporting termination under Subsection 2511(a)(2). *See T.S.M.*, *supra*; *S.M.*, *supra*. First, Father does not identify which goals he would have accomplished had he not been incarcerated. Second, we reject Father's challenge that insufficient efforts and resources were made available by others to help him connect with the Children while he was incarcerated, especially where Father fails to identify **what affirmative efforts or steps that he initiated on his own** to support a parent-child relationship with the Children. *See E.A.P.*, *supra*; *see also M.A.B.*, *supra*. Indeed, Case Manager Maradiaga-Portillo testified that she mailed Father his case plan objectives— which had not been returned as undeliverable—but she never received

Father's response[5] and was never able to directly communicate with Father during his incarceration. *See* N.T. Termination Hearing, 2/27/24, at 330-31. Case Manager Maradiaga-Portillo also testified that, prior to his incarceration, Father never engaged in his case planning. *See id.* at 331. She further testified that Father made no progress towards reunification with the Children, failed to comply with all objectives, and the Children never mentioned Father. *See id.* at 335. Case Manager Maradiaga-Portillo also indicated that no person ever availed himself to CUA claiming to be the Children's father and that the Children are not in contact with anyone claiming to be their father. *See id.* at 336. Contrary to Father's claims, we conclude that Father's rights were not solely terminated due to his incarceration where the record reflects that Father's relationship with the Children was minimal, even during those periods where he was not incarcerated. Under these circumstances, we are satisfied that the court did not err or abuse its discretion in finding that Father's repeated and continued incapacity has caused the Children to be without essential parental care, control, or subsistence, and the causes of the incapacity cannot or will not be remedied. *See In re K.Z.S.*, *supra*; *S.M.*, *supra*; 23 Pa.C.S. § 2511(a)(2). Accordingly, Father is not entitled to relief on his first issue on appeal.

---

[5] Case Manager Maradiaga-Portillo also confirmed that Father knew how to reach her. *See* N.T. Termination Hearing, 2/27/24, at 340 ("[Father] definitely had my address.").

In his second issue, Father challenges the termination of his parental rights to the Children under Section 2511(b) and argues that

> [i]t was not in the best interest to terminate Father's rights to [A.A.B. because Psychiatric Nurse Practitioner Virginia Biddle, who is A.A.B.'s psychiatrist and met with A.A.B. twice a month for approximately eighteen months to two years,] testified that [A.A.B.] would suffer irreparable harm if Mother's rights were terminated. If Mother's rights were terminated[, then] Father's rights should not have been terminated in the case. The termination of [F]ather's rights would serve no purpose if Mother's rights should not have been terminated. Mother's counsel did file an appeal of Mother's termination.

Father's Brief, at 22; *see also* N.T. Termination Hearing, 2/27/24, at 94-95 (Mother's counsel: "And do you fear that there would be negative effects to the termination of M[other]'s rights[?]" Nurse Biddle: "I fear there would be negative effects if the visits would stop. . . ." Mother's counsel: "Would the[ ramifications] be permanent [for A.A.B.] never seeing his mother again?" Nurse Biddle: "It would be difficult to predict . . . [i]t might take [A.A.B.] nine more years [to feel better.]"). We conclude that Father is not entitled to relief on this second issue.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *See In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> [i]n this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary[,] and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted). When the record is devoid of evidence of a bond between the parent and the child, it is reasonable to infer that no bond exists. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008).

After our review, we first note that we follow Father's argument with great difficulty. Nevertheless, he appears to argue that, because Mother's parental rights should not be terminated, neither should his own. Second, we observe that Father cites no case law in support of his position; thus, we could find the issue waived. *See In re D.R.-W.*, 227 A.3d 905, 910-11 (Pa. Super. 2020) ("Given the lack of discussion and citation to relevant legal authority, we find that Father has waived any issues relating to error on the part of the trial court as it relates to [Section] 2511."); *see also* Pa.R.A.P. 2119(a). Third, even if not waived, as to the issue of Children's bond with Father—who, as opposed to Mother, is the relevant party for this appeal, *see Z.P.*, *supra*— Case Manager Maradiaga-Portillo testified that neither of the Children discusses Father and no individual has ever availed themselves to the CUA claiming to be the Children's father. *See* N.T. Termination Hearing, 2/27/24, at 335-36. Further, Nurse Biddle testified that A.A.B. never discussed Father. *See id.*, at 86. Under these circumstances, it is reasonable to infer that there

is no bond between Father and the Children. *See K.Z.S.*, *supra*. Fourth, the record supports with clear and convincing evidence the conclusion that the Children would not suffer harm by terminating Father's parental rights. *See* N.T. Termination Hearing, 2/27/24, at 335-36 (Case Manager Maradiaga-Portillo testifying that Children would not suffer irreparable harm in terminating Father's parental rights and that Children and Father do not share relationship or bond); *see also T.S.M.*, *supra*; *S.M.*, *supra*. Indeed, Nurse Biddle testified that A.A.B. wanted to be adopted by his resource parent. *See* N.T. Termination Hearing, 2/27/24, at 101 ("Do you believe that [A.A.B.] would experience [. . .] harm, based on the statements that he wanted to be adopted, if he was not adopted by [his resource parent]? Nurse Biddle: "Yes. That would also be disappointing for him."). Accordingly, we conclude that Father is not entitled to relief on his second issue on appeal.

Orders and decrees affirmed.[6] Additionally, we direct the Prothonotary to send a copy of our memorandum decision at Nos. 2495 EDA 2024 through 2498 EDA 2024 (Mother's appeal) to Father.

Judge Dubow did not participate in the consideration or decision of this case.

---

[6] Given our decision to affirm the trial court's termination decree, any challenge to the goal change orders is moot. *See D.R.-W.*, 227 A.3d at 917.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/15/2025</u>